Thank you, Your Honors, and may it please the Court, Paul Clement for the appellants. Congress in the Affordable Care Act made a deliberate judgment to give members of Congress and Congressional staff the same health care options available to their constituents under the new act. OPM, in purporting to implement that statutory provision, made an equally deliberate decision to preserve the possibility for Congressional staff to enjoy their pre-existing federal benefits or, in the alternative, to continue to enjoy a handsome federal subsidy. Appellants, a senator and his legislative counsel, are the direct objects of both the statute and the OPM rule, a status which generally means that they have standing to challenge the rule as an unfaithful interpretation of the statute. Nonetheless, the District Court erroneously dismissed their challenge for lack of standing. That decision is wrong and plaintiffs have standing for three independent reasons. First, and most obviously, the challenge rule places administrative burdens on the plaintiffs, and those burdens are, of course, fully consistent with the reality that the plaintiffs are the direct objects of the challenged rule. Well, Mr. Clement, what about the argument that's presented that it's either minimal or can be avoided by the opting out of the responsibility for implementing it? Well, Your Honor, I don't think it is either minimal and I don't think that it can be opted out. I think, first, with respect to the opt-out possibility, what the government's alluded to is the fact that in the regulatory sort of preamble, there's the suggestion that this administrative office of the Senate in the case of Senator Johnson. And so what you have here is essentially a burden to designate or delegate. And I think either way you slice it, that is a substantial and a real burden. The District Court dismissed it as ministerial. Of course, it's the opposite of that. It's an entirely discretionary judgment that, of course, the OPM itself treats as the final determination. And I think that the burden, if it's done conscientiously, is going to be a significant burden. But with all respect to the District Court, even a ministerial burden, I actually think, would be sufficient for Article III standing purposes. I think this is more than ministerial. I think it can be potentially divisive because you're treating some members as members of the official office and some members of your staff as something else. Yeah, maybe you could clear that up for me. I'm not sure I got from the briefs. How are you on a staff and off a congressional staff? I'm just asking generally, if you know. How you divide what's official and what's an unofficial staff member? Well, I don't think the distinction would ultimately be between an official member and an unofficial member. I think, at least in the abstract, based on the statute, the difficult calls or the ambiguity, if you will, would be maybe with committee staff members or for people who have leadership offices, whether their leadership office is a member of their personal staff or is funded in some other way. I think one thing, though, that's important is that the clear thrust of the statute itself was to treat most congressional staffers, at least who work directly for a member, put to one side the Congressional Research Service or something. But most congressional staffers were intended to be put on the exchanges without a subsidy. Now, in fact, by giving this discretion to the individual members, OPM created the possibility that at least some offices would keep the vast majority, if not all of their staff, on the FEHBP traditional benefits, therefore frustrating the Do you know how many staff members are in the average senator's office? I'm sorry? How many staff members are there on the average? There's nothing in the record. I mean, I worked in the Senate office a long time ago, so I'd say something in the neighborhood of 30. They're public records, I assume. Yes, yes. And I think it's somewhere in the neighborhood of 30. We could take judicial notice of what was in public record. Sure. Have there been any other regs that make this distinction between official and unofficial that members have to make? I don't think so, Your Honor. As far as I can tell, the definition in the statute that created this idea of staffers who are part of the official office of the member is kind of a new term of art. And I think, in fairness, OPM, and I think this is what you would have probably expected, is that OPM could provide some regulatory definition that puts some additional gloss on that. And if OPM had done that, I don't think we would have the administrative burden argument. We'd still have our other arguments. But OPM made a decision here that really is a deviation from the normal course. With respect to every other federal employee, the employee eligibility question is determined by OPM based on their regs. But just for congressional employees, they made this decision to delegate the designation responsibility to the offices themselves. So let me just stick with me for a minute. Under your rationale, does any administrative agency that's compelled by Congress to make classifications have standing to challenge the statute or regulation based on its administrative burdens? I'll try to answer the question and see if this is responsive. If Congress passes a statute that then is implemented by an administrative agency in a way that puts administrative burdens on the congressional staff, I think that's sufficient to give the congressional staff or the office Article III standing. Now, I can imagine there might be some context where there are other prudential considerations going on. But certainly, if when we're talking about the realm of OPM, you're talking about benefits and opportunities, health care options that are really quite personal to the senator and their staff. So I think one thing to keep in mind in thinking about this case is this is really not your typical legislative standing case where you have some member of Congress with an abstract beef. They want to challenge the war in Vietnam or whatever it is. This is something that really goes to how the office is going to operate with respect to the administrative burdens and the health care options that are going to be available to the senator and his staff, which are, again, I think very personal things that are different from, again, these kind of line item veto type contexts. So then give us sort of a bright line that we can use. Because if we go with your reasoning, isn't it possible that any time a political figure has to enforce a reg, that that politician could argue that the injury would mean they are forced to exercise discretion and they've compelled to follow the regulation. Would they automatically then, there would be an automatic injury. Is that what you want us to find or go that far or give us some way to draw a line? I don't think you would have to go that far, but I do honestly think that would be the correct ruling. Because I think it's worth keeping in mind that it's the rare sort of executive branch rule that is promulgated that puts a responsibility on a congressional office. I mean, that's not the normal situation. And normally, you sort of don't have to worry about this because normally it's the executive agency. And if they promulgate something, the imposition is on private citizens. And they presumably have standing to challenge the rule. What makes this a little bit different is they're imposing the responsibility on members of Congress and their staff. But that's only because we're talking about their benefits. And so I think in a sense that even if you adopt what you may be describing as the broader rule, I think it's almost self-limiting. I just don't think there is this large universe of regulations that impose these kind of burdens, certainly not on congressional offices. It certainly would be open to you if you wanted to sort of cabin your holding by making clear that you don't have to consider what would happen in a situation where what was at issue were not the benefits available to the individual office. But I do think that even if you adopt what may seem like the broader holding, it almost limits itself. I don't know of a lot of other situations where you have this dynamic where the executive branch is essentially delegating some responsibility and imposing some burden on the congressional office itself. One other thing about the administrative burden before I talk a little bit about the other items here, I guess maybe two more points. One is the government suggests that it's really the burden stems from the statute and not from the rule. And as I've already suggested, with all due respect to the government, that's just not right. The statute does have a definition, but in the normal course, that definition would be administrated by the OPM. They would make the determination. They would have the final determination as to eligibility. And I think it's worth noting that that is the case with respect to every other government employee. And so there's a specific provision that was added in the challenged rule. This is section 890.102E that specifically says, this determination, the final word comes from the congressional office. Everything else, OPM makes the determination. So it would be very easy, in fact, probably the expected course, that OPM could interpret the statute, implement the statute without imposing this administrative burden on the office. That administrative burden comes directly from the challenged rule and not from the statute. The second point I wanted to make about the burden before turning to some of the other arguments is that the burden that's imposed on the office is a particularly difficult one here because the way that OPM has structured this regulation, Senator Johnson, in making this designation, is forced to choose between two options, both of which he thinks are contrary to the statute. So he can either designate somebody as not a member of the official office, in which case they stay on the FEHBP, which he thinks violates the statute, or he can designate them for the shop exchange. And that shop exchange notion is built right into the challenge regulation. And the reason that's so problematic, this does get into the merits a little bit, but it's problematic because his view is there is no way under law that the congressional staffers can get their benefits under the shop exchange because that requires OPM to treat Congress as a small business. So your position is he can't just do nothing? That is our position, that he cannot just do nothing. Of course, even if he could do nothing, which is to say the way I read the regs, he has to do something, there has to be a final designation, and he has to either designate or delegate. But even if I'm wrong about that, the only default option he's given, the way that the regulation is written, is if he does nothing, then his entire staff stays on the FEHBP. And of course that's what he thinks is the most obvious violation of the statute imaginable, because the whole point of this thing was to take them off of the FEHBP. And so, just to underscore the point I was just making, he has no good option here in his view, because either option he's given under the reg, he thinks violates the statute. Now in any other circumstance I can think of, if a government agency puts somebody in an option where that individual thinks both options violate the statute, that individual gets to go into court and challenge the rule as an invalid interpretation of the statute. And we don't think there's anything in the legislative standing cases that suggests that he should be treated differently. I do want to, before I sit down, also mention the, essentially what we call kind of the equal treatment argument as well as the basis for standing. I think there's only one anomaly about the argument here about being denied the right to equal treatment. And that is, at a superficial level, it looks like Senator Johnson and his staff are being treated better than they should be under the statute. And of course, I completely understand there's a superficial sense in which that seems like, well, wait a minute. I totally understand that if you're denied equal treatment and you're treated worse, that's something that you get to have standing to challenge. But in this context, I think it is quite appropriate to recognize that for a member of Congress in particular and for their staff in particular, the allegation or the reality that they are being treated better than their constituents is itself an injury. Now, the D.C. Circuit has recognized that in the Boehner case, but I think this is a fortiori from the Boehner case because here, that basic judgment that being treated better than your constituents is a liability and not an asset is reflected in the statute that stated this, they understood that there was criticism of Congress because their health care benefits were considered Cadillac benefits. And here they were taking lots of their constituencies and putting them on the exchanges as individuals. Now, in that context, I think Congress recognized that it was, in fact, a liability for them to continue to get the Cadillac coverage under the FEHBP. And at least in this context, and this is where I think you could narrow your rationale, you could narrow your holding to a circumstance where the statute itself recognizes this sort of unusual dynamic. And I think it is something, though, that is not maybe I spent too much time in Washington, but this actually seems to me quite straightforward that a member of Congress has to be concerned about allegations that they are feathering their own nest, that they are giving themselves special benefits that are not available to constituents. So then if we, if we, by your rationale, does that mean that a senator would have standing to challenge any law or regulation that might harm his political reputation or have a negative impact on his constituents? I don't think so. I don't think so. I think this, on this one, I think would be very easy to limit the holding to issues like pay and benefits. I think all you need to do is to recognize that in this context, it is, there's nothing implausible about the allegation that a member of Congress is actually injured in Article 3 sense by being paid more than he or she is entitled to. He, this being the senator, I'm not talking about counsel or staff, can reject the benefit, right? They can, but I don't think that's a material difference. And I think that for essentially two reasons. First of all, I think that if, if, if the rejection option were enough, Congress wouldn't have had to do anything. Even under the old regime, every member of Congress had the option, in fact their staff too, to decline the FEHBP benefit. I'm not aware of anybody that did it because they're quite nice benefits, but they had that option. So Congress, when they took everybody off of the FEHBP and put them onto the exchanges, was, was in a sense by doing that, recognizing that they were concerned about having the option. Just being able to decline the option wasn't enough. And I think that's consistent with what they were worried about with their constituencies, which, which is to say that the members of that were not available to their constituents. And I think in a context like this, that is something that I think is very understandable as an injury. I think it can be cabined to your question, Judge Williams, to this context of pay and benefits. I, I certainly understand that when you get into situations where members of Congress are saying that, you know, that, that, that allowing some statute to go forward is going to interfere with their election prospects, that that gets you into the concerns in your typical legislative standing case. But I don't think that's the case with these benefits and with pay. And I think, you know, there's a reason that the Raines case distinguished Powell against McCormick. If I could reserve the balance of my time. Of course. Thank you, Mr. Clement. Mr. Stern? May it please the Court. This case is one about standing. Standing is the only issue, not the merits. And I'd like to turn first to the discussion of the administrative burden on which my friend, Mr. Clement, spent most of his time. The statute itself creates the distinction between congressional staff, which is a term defined to mean members of employees of a member's official office and other congressional employees. So that built in to this statute, there is a distinction to be made. And I do not understand plaintiffs to be contesting that. Now, this suit is not a suit that urged that it was OPM's responsibility to make those distinctions, which OPM very understandably did not want to get into the business of telling congressmen and senators which of their staff were their official staff. And in practice, there has been immense disparity in the way both the different political parties and different members within those parties have applied that. The Senate legal, the Senate administrative office back in 2013 notified its members, notified senators that they were going to, in the absence of any indication, they were going to do some sort of bright line rule in which the personnel who were paid from the senator's official money were going to be part of the official staff and others wouldn't. My understanding is that, and this is all matters of public record, and I certainly defer to Mr. Klent if I'm misstating anything, but my understanding is that in December of last year, Senate Republicans took a vote and determined that all of their employees would be deemed congressional staff. Now these, whether one agrees or disagrees with any of these actions, those were things that they were all free to take. Now again, the allegation in this suit is not that OPM should have instead preempted the senators from making these determinations. The allegations of this suit have to do with the availability to Senate staff of federal payments on the shop exchange. That's what this suit is about. So if one were to say and to accept all the merits arguments and say, right, you can't have these kinds of payments on the shop exchange, those are invalid, it would make absolutely no difference whatsoever to the fact that senators would have to distinguish or the administrative office would have to distinguish or a party caucus would have to distinguish among, between the employees of an official office and other congressional employees. That's built into the statute and some of those people are going to be eligible for FEHB and some are not. That's not OPM's doing. No order in this case could provide redress for that asserted administrative claim. That's even to the extent that a senator is required to do anything at all. Except for present purposes, there it doesn't matter. That's the administrative burden. The remaining arguments have to do with the perception that the senator is getting more than he ought to get and that there's some sort of, that this creates, that having to make these distinctions causes bad feeling among staff and that there is at some level a denial of equal treatment. Now, these really sound a lot like sort of institutional concerns, but to the extent that they're not, they find no support whatsoever in this court's precedent or we think in any other court of appeals decisions. Now, I understand your position that even if they did nothing, it wouldn't matter, but what really is the consequence of doing nothing? They just default back to what was the status quo before the action. No, no, that's not at all true. The status quo, and again, I stand ready to be corrected on this, but the status quo was that all the people, the congressional staff are not going to get FEHB, which was the status quo before. There's no doubt that they're not getting that. The only question is whose staff, and how do you determine that? Somebody has to determine that. That's the case whether if OPM had never sort of, whether or not OPM has the authority to make a decision. Make certain benefits available to non, to staff, right? That's the allegation, the claim in this suit, is OPM exceeded its authority by making certain kinds of benefits on an exchange available to staff, but that doesn't have anything to do with the fact that there needs to be a distinction between staff who are not eligible now for FEHB and non-staff who are still eligible for FEHB, and again, the Senate Administrative Office, my understanding is that, look, if you don't tell us what to do, then the people who get paid individually, like from your individual budgets, they're going to be staff and others won't. My understanding is that there's since been a Senate vote among Senate Republicans to establish uniform treatment. Maybe that's incorrect. Exactly what's happening, like doesn't matter. The point is, one way or another, that's a decision that has to be made and it flows from the statute, not from the OPM regulation. So that the, I'm sorry, Your Honor. No, go ahead. The... So it, I mean, it really boils down to a question of the budgeting. I mean, whose budget is... I mean, really the bottom line in terms of budgeting, in terms of what pot the benefits are going to be paid from. The, I mean, the claim in this suit is that there should be no benefits, if one describes them that way, paid to staffers. There's no dispute that people who are not staff can be paid, are eligible for FEHB. There's a disconnect between the claims of injury about the administrative burden and the legal claim in this suit, because if you bought the legal claim in this suit, it would not regress the claims of injuries about having to make distinctions between staff and non-staff, because everybody recognizes that that's a real distinction that flows from the statute, and the claim in this suit is not that OPM failed to undertake a regulatory duty for which it was responsible, and that this lawsuit is attempting to compel OPM to perform that duty, that we have to complain backwards and forwards, and we'll find no claim like that in there. This is a claim about having exceeded authority, so there is no redressability here. And as for the claim about the reputational interest, I think, in fact, one couldn't cabinet to issues of, like, benefits, and the only case on which the plaintiffs rely is the D.C. Circuit. Now, we respectfully suggest that the Tenth Circuit was correct in its later Schaffer decision in concluding that the D.C. Circuit was wrong. The D.C. Circuit offered no analysis for its holding, and it was issued prior, rather, to the Supreme Court's decision in Rains v. Byrd, which made clear that the courts should be extremely hesitant to find congressional standing in a case like here, where the injury really runs with the office, to use the language of the Supreme Court in Byrd. It's, like, in a sense, I suppose one could characterize it as an individual interest, but as in Byrd, if the senator stopped being a senator tomorrow, the injury goes away with it. But, at any rate, we think that even on a case that was distinguishable, that involved a pay raise that was automatic, here, nobody suggests that Senator Johnson or his aide is required to purchase any particular kind of insurance. The complaint nowhere alleges that they've purchased, sort of, comes with any kind of federal contribution on an exchange, so that the notion that they are going to be perceived as having, sort of, partaken of some benefit to which would, at some level, put them in a different league from their constituents is simply without foundation. And again, this court's precedent in cases like People v. Care and Cronson and DiMiccio, we think all, sort of, underscore the extent to which this court has been very vigilant in policing claims about individual injuries that are really, sort of, more of an institutional injury. Cronson, again, is the case about the Illinois Auditor General. This court emphasized that a feeling that a sincere belief that should be able to perform his rightful functions under the law and the law should be obeyed, that's not sufficient to confer standing. People v. Care was the school board members who wanted to intervene. This court stressed that orders to do something in your official capacity generally don't confer standing, notwithstanding the allegation in that case that the plaintiffs were made to appear to their constituents, the proposed interveners, rather, were made to appear to their constituents as dissembling politicians. You know, this court's cases are very consistent. The only case on which plaintiffs rely is Boehner, and we think that Boehner is distinguishable, and the mere fact of having an option open that a senator does not avail itself of, well, this court's cases, including, I believe, one we cite, are very clear that if you've got options, and some of them are problematic and some of them aren't, you don't get to claim standing because you might have pursued an option that, had you done so, could have been problematic. But this business about injury to reputation is not easily cabined and has not been the ground on which cases have relied. A case that I would like to note is one cited by Plaintiff Sumiki, the Meese v. Keene case, mostly because that's so readily distinguishable, and that case involved the exercise by a legislator of a First Amendment right, the right to show a film, and the question in that case was whether that right was being burdened. We don't have anything of that nature here, but what's also interesting in that case is that the legislator produced detailed affidavits laying out the ways in which the film that he wanted to show was going to be labeled political propaganda, how that was going to adversely affect him. It didn't rely on conclusory allegations. I'm happy to answer any questions that the court may have. Thank you very much. Thank you, Your Honors. Just a few points in rebuttal. First on the OPM rule and one point of agreement and one point of very intense disagreement. I certainly agree with Mr. Stern that we are not here challenging the OPM rule on the grounds that it was somehow improper for them to designate this to the offices rather than keep it itself. But our point is very much that that decision, which was the decision made by OPM and the rule, not by Congress and the statute, has consequences. And because the rule imposed those administrative burdens on the offices, that is something that gives us standing. OPM could have kept this authority itself, and if it did, we would not have the administrative burden argument. But they consciously imposed an administrative burden on the offices, and that's sufficient for Article III standing. Now the point of disagreement, and I don't think anything turns on it, but if it does, I think we need a remand. Because on a motion to dismiss, I don't think their characterization of what's really going to happen carries over our allegations and our complaint. But my understanding, just based on reading their own regulation, is it's quite clear what happens if no designation is made. Because the way the statute works is you stay on the FEHBP unless you are, one, a member of Congress, or two, designated to Congress. If there's no designation under the reg that they promulgated, you stay on the FEHBP. And that is part and parcel of our concern, and there's no redressability problem with that whatsoever. Keep in mind, we have two beefs with the way the reg works. One is that it keeps some members, some congressional staff members on the FEHBP. That's problematic enough. The second thing is, as with respect to everybody else, we're supposed to designate them on to the shop, and we think that's equally problematic because that allows them to keep pre-tax benefits on the theory that Congress is a small business, which we think is completely invalid on the merits. We'd just like the opportunity to make that case. As to the Boehner and Schaefer cases, yes, there is a disagreement between the D.C. Circuit and the Tenth Circuit. Now, I don't think it's at all fair to the D.C. Circuit to say that that decision lacks reasoning. I actually would invite you to look at the reasoning of Judge Ginsburg in the D.C. Circuit case and Judge Lucero in the Tenth Circuit case. You'll obviously make your call on that. I think there is much to commend itself in Judge Ginsburg's decision. I think that two points in addition to that, there really are two issues here. One is the issue of whether a benefit can ever give rise to an Article III injury. And on that, there's plenty of reasoning in Boehner, and I think it's exactly right in the context of members of Congress. The second point is that Mr. Stern suggests that somehow Boehner doesn't survive Rains v. Byrd. With all due respect, I completely disagree. Rains went out of its way to distinguish Powell v. McCormick. I think the idea that members' benefits are different from abstract concerns remains very good law. I think there is a line between Rains and Powell against McCormick, and I think Boehner in this case are on the Powell v. McCormick side of that line. The thing is, though, with Boehner, because he actually received the pay increase, I mean, it wasn't speculative. But with all due respect, this is no more speculative. Congressman Boehner could have returned that money to the Treasury. In fact, that's what the Tenth Circuit said in Schaefer. So they're both optional, and as I've indicated, even the offering of the option is completely non-speculative and is part and parcel of the injury, because members of Congress are being offered options that are not available to their staffs. The last point I'd like to make is I think this Court's circuit decisions, Curran, D'Amico, I think all support our position, because they all say if this were a matter of benefits, of course there would be standing in these cases. And lastly, as to the affidavits in the Meese v. Keene case versus the record here, I'd So you were way further into the litigation. If the problem here was that we needed more affidavits, then we should have been given the opportunity to put affidavits on, or we should have gotten to summary judgment. But we lost this case on a motion to dismiss in a situation where I think the Article III injury on both burden and the unequal treatment are crystal clear. Thank you, Your Honors. Thank you, Mr. Collette. Thank you, Mr. Stern. Thanks to all counsel. The case is taken under advisement.